In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00170-CR


______________________________




DONALD ORESTE ROYALE, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 196th Judicial District Court


Hunt County, Texas


Trial Court No. 17,215




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 On September 12, 1994, Donald Oreste Royale pled guilty to the offense of aggravated
robbery in Hunt County cause number 17,215. The record before us indicates Royale committed the
offense on June 16, 1992. At that time, as remains true today, aggravated robbery was a first-degree
felony. (1) Having previously admonished Royale about the punishment range applicable in this case
(five to ninety-nine years, or life), see Tex. Pen. Code Ann. § 12.32(a) (Vernon 2003), the trial court
accepted Royale's plea and deferred a finding of guilt, placing Royale on community supervision for
a period of ten years, provided and conditioned that, among other things, he abstain from the use of
illicit or habit-forming drugs unless the drug was prescribed by a licensed physician for legitimate
medical purposes. 

 On May 2, 2002, the State filed a motion to adjudicate Royale's guilt. The State alleged
Royale violated the terms of his community supervision by using amphetamines on March 27, 2002,
April 5, 2002, and April 25, 2002. On July 29, 2002, Royale admitted using amphetamines on
March 27 and April 5, 2002. The trial court accepted Royale's plea of true and ordered that a
presentence investigation (PSI) report be completed. The trial court continued the case for
sentencing pending completion of the PSI report. 

 On September 4, 2003, the trial court heard testimony from Royale's community supervision
officer and from witnesses on Royale's behalf regarding the issue of disposition. At the conclusion
of the disposition hearing, the trial court formally adjudicated Royale's guilt, found Royale had
previously and finally been convicted of a felony, and sentenced Royale to twenty-five years'
incarceration. 

 On January 23, 2003, Royale's appellate counsel filed an Anders (2) brief in which he
professionally discussed the record, described the issues reviewed, and concluded there were no
arguable grounds for appeal. Also as required by Anders, he filed a motion to withdraw. Counsel 
sent Royale a copy of the appellate brief and informed Royale of his right to file a pro se response. 

 On February 21, 2003, Royale filed with this Court a timely pro se response brief. Therein,
Royale contends (1) the original judgment granting deferred community supervision is void, (2) the
trial court failed to consider mitigating evidence, and (3) he received ineffective assistance of
counsel.

 Royale first claims the 1994 judgment is void for want of jurisdiction. His claim hinges on
his belief that a trial court may not grant community supervision for an aggravated felony offense. 
In  a  case  where  the  defendant  is  convicted  of  an  aggravated  felony  offense  as  defined  by
Article 42.12, Section 3g of the Texas Code of Criminal Procedure, the trial court may not grant
"regular or straight" (adjudicated) community supervision to that individual. Tex. Code Crim.
Proc. Ann. art. 42.12, § 3g (Vernon Supp. 2003). A trial court may, however, find the evidence
substantiates the defendant's guilt and defer a finding of guilt and place the defendant on community
supervision for a term of years. See Tex. Code Crim. Proc. Ann. art. 42.12, § 5 (Vernon Supp.
2003).

 Royale cites Heath v. State, 817 S.W.2d 335 (Tex. Crim. App. 1991), for the proposition that
the original judgment was void. The trial court in Heath had granted the defendant community
supervision after entering a finding of guilt. Id. at 336. The Texas Court of Criminal Appeals held
the trial court was without jurisdiction to grant community supervision pursuant to a plea agreement
after it had entered a finding of guilt; accordingly, the underlying judgment was void. Id. As
explained above, however, the facts from Heath are not present in the case before us. The trial court
did not enter a formal finding of guilt before placing Royale on community supervision, but instead
deferred that finding conditioned and provided that Royale successfully complete the ten-year period
of community supervision. The Legislature has expressly provided for such a mechanism, and the
trial court was clearly authorized to place Royale on deferred community supervision under the facts
of this case. See Tex. Code Crim. Proc. Ann. art. 42.12, § 5. The original judgment placing
Royale on community supervision is not void for want of jurisdiction.

 In his second point of error, Royale contends the trial court failed to consider evidence of his
bipolar diagnosis in sentencing him. Royale believes the trial court should have returned him to the
Substance Abuse Felony Program (3) rather than sending him to prison. From the record before us, we
find no evidence that shows the trial court failed to consider and give weight to the evidence offered
in mitigation of punishment. Nor has Royale cited any comparisons or authority for his second point
of error. Cf. Phillips v. State, 887 S.W.2d 267, 270-71 (Tex. App.-Beaumont 1994, pet. ref'd)
(record does not show trial court failed to consider mitigation evidence and contains no evidence of
arbitrary sentencing by trial court based on comparative sentences in other courts for similar
offense). Additionally, Royale's community supervision officer testified that Royale showed little
promise of successfully being rehabilitated from his chemical dependency in the remaining two years
of his community supervision. Based on the record before us, we overrule Royale's second point of
error.

 In his third point of error, Royale contends he received ineffective assistance of counsel at
trial because his trial counsel failed to realize the underlying judgment granting community
supervision was void for want of jurisdiction. The standard for testing claims of ineffective
assistance of counsel is set out in Strickland v. Washington, 466 U.S. 668 (1984). To prevail, an
appellant must prove by a preponderance of the evidence (1) that his or her counsel's representation
fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced
his or her defense. Id.; Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000); Rosales v. State,
4 S.W.3d 228, 231 (Tex. Crim. App. 1999). Under this standard, a claimant must prove that
counsel's representation so undermined the proper functioning of the adversarial process that the trial
cannot be relied on as having produced a just result. Strickland, 466 U.S. at 686.

 As explained above, Royale's underlying premise-that the original judgment granting
deferred community supervision or want of jurisdiction-is without merit. The Legislature has
expressly authorized trial courts to grant deferred community supervision to defendants charged with
an Article 42.12, Section 3g offense. Tex. Code Crim. Proc. Ann. art. 42.12, § 5. It is only once
those defendants are formally found guilty of committing such an offense that they  become
 ineligible  for  judge-granted  community  supervision.  Tex.  Code  Crim.  Proc. Ann. art. 42.12,
§ 3g. Because no formal finding of guilt had been entered on the underlying charge at the time the
trial court placed Royale on community supervision, the trial court acted within its authority and
jurisdiction. It therefore cannot be said Royale received ineffective assistance of counsel because
his trial counsel did not object to the valid original grant of (deferred) community supervision. We
overrule Royale's final point of error.

 We affirm the trial court's judgment.

 


 Josh R. Morriss, III

 Chief Justice


Date Submitted: May 20, 2003

Date Decided: June 6, 2003

Do Not Publish
1. Tex. Pen. Code Ann. § 29.03(b) (Vernon 2003); and Act of May 24, 1973, 63rd Leg., R.S.,
ch. 399, § 29.03, 1973 Tex. Gen. Laws 883, 926, amended by Act of May 29, 1989, 71st Leg., R.S.,
ch. 357, § 2, 1989 Tex. Gen. Laws 1441, 1442.
2. Anders v. California, 386 U.S. 738 (1967)
3. See Tex. Code Crim. Proc. Ann. art. 42.12, § 14 (Vernon Supp. 2003).



 leg brace was 
actually visible before the jury. Thus, there is no indication of an offense to the dignity and decorum
of the courtroom proceedings. As a result, absent any evidence the jury actually saw the leg brace,
we conclude, beyond a reasonable doubt, that Hawkins did not suffer harm. (2) 

 The final factor is whether we should reverse this case to assure this error will not be
repeated. Our judicial system rests on our trial courts' timely and correct application of the law; not
merely the correction of errors by superior courts. Since this is not the first time this issue has been
raised from the same trial court, we had concern that this practice had become a routine in that court. 
It is now represented to us that the procedures in that court have been formally changed in order to
comply with the constitutional requirements on this issue. With that assurance, we find it is
unnecessary to reverse this case on the basis that an affirmance would lead to a repetition of the
error. We find the error in this instance to be harmless. 

 We overrule the contention of error.

II. Improper Expert Testimony 

 Hawkins next contends that the trial court erred by allowing police officer Mark Sillivan to
testify over objection that wounds on the arms of the victim were consistent with him raising his
arms in a defensive manner. Sillivan had been qualified as an expert in the area of crime scene
investigation. On the night of the murder, Sillivan observed and made photographs of the wounds
found on the victim's body. 

 On appeal, Hawkins argues that the testimony was speculative and outside the scope of
Sillivan's expertise pursuant to Rule 702 of the Texas Rules of Evidence. See Tex. R. Evid. 702. 
We review a trial court's decision to admit or exclude evidence for abuse of discretion. Alvarado
v. State, 912 S.W.2d 199, 216 (Tex. Crim. App. 1995); Darling v. State, No. 06-06-00150-CR, 2008
WL 3367553, at *3 (Tex. App.--Texarkana Aug. 13, 2008, pet. filed).

 In this case, Sillivan was properly qualified as a forensic and fingerprint expert in reviewing
crime scenes. Although the State suggests that his qualifications are sufficient to justify his
testimony regarding the physical aspects of injuries sustained during the course of a crime, our
review of his qualifications does not reveal special credentials to speak as an expert about wound
patterns. But in proper instances, lay witnesses may express opinion testimony. Tex. R. Evid. 701. 

 Lay witnesses may testify to their opinions or inferences which are (a) rationally based on
the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the
determination of a fact in issue. Id. 

 A distinct line cannot be drawn between lay opinion and expert testimony because all
perceptions are evaluated based on experiences. However, as a general rule, observations which do
not require significant expertise to interpret and which are not based on a scientific theory can be
admitted as lay opinions if the requirements of Rule 701 are met. This is true even when the witness
has experience or training. Additionally, even events not normally encountered by most people in
everyday life do not necessarily require the testimony of an expert. The personal experience and
knowledge of a lay witness may establish that he or she is capable, without qualification as an expert,
of expressing an opinion on a subject outside the realm of common knowledge. United States v.
Paiva, 892 F.2d 148, 157 (1st Cir. 1989). It is only when the fact-finder may not fully understand
the evidence or be able to determine the fact in issue without the assistance of someone with
specialized knowledge that a witness must be qualified as an expert. Osbourn v. State, 92 S.W.3d
531, 537 (Tex. Crim. App. 2002).

 Here, the evidence established that Sillivan was a trained investigator of crime scenes. His
training included latent fingerprint examination, forensic aspects of death investigation, sketching,
and the handling of evidence. He further testified that he has observed other instances of defensive
wounds during his career. His testimony was that the wounds on the victim were consistent with
other defensive wounds he had observed. We find this observation did not require significant
expertise to interpret, did not rely on a scientific theory, and was admissible under Rule 701 as lay
opinion testimony even though Sillivan had some technical training. See id. Courts have admitted
a variety of opinion evidence from peace officers and lay persons when the evidence meets the
requirements of Rule 701. See Hollis v. State, 219 S.W.3d 446 (Tex. App.--Austin 2007, no pet.)
(testimony of peace officer that defendant had blisters and discolorations on his hands indicating
methampethamine exposure); Williams v. State, 191 S.W.3d 242 (Tex. App.--Austin 2006, no pet.)
(officer with some training allowed to give lay opinion that defendant did not exhibit signs of one
with mental health issue); In re J.C., 892 S.W.2d 87 (Tex. App.--El Paso 1995, no pet.) (testimony
of lay person that bruises appeared to be one day old admissible since witness had recent personal
experience with bruising). The trial court did not abuse its discretion in allowing this testimony. 

 Even if this evidence had been inadmissible, it did not constitute reversible error. In our
review of nonconstitutional error, we are to disregard errors, defects, irregularities, or variances that
do not affect substantial rights of the accused. Tex. R. App. P. 44.2(b). A "substantial right" is
affected when the error had a substantial and injurious effect or influence in determining the jury's
verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); see Tex. R. App. P. 44.2(b). 
If, on the record as a whole, it appears the error "did not influence the jury, or had but a slight effect,"
we must conclude that the error was not harmful and allow the conviction to stand. Johnson v.
State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

 Those wounds had previously been discussed in detail by the pathologist who had performed
the autopsy of the victim's body. She testified to the existence of two very small and very superficial
lacerations on the victim's left forearm. In response to questions propounded by the State, she
testified that the wounds could be considered defensive based on their location, but one could not
be sure.

 Thus, we have a qualified expert testifying that the lacerations were in the proper location,
and might have been defensive wounds, and a police officer testifying similarly that they were
consistent with defensive wounds. 

 Under this state of the record, we do not find that the admission of testimony by the officer
that was very similar to the pathologist's testimony was such as would affect a "substantial right" of
the defendant, i.e., one that had a substantial and injurious effect or influence on the jury when
reaching its verdict. See King, 953 S.W.2d at 271; see also Tex. R. App. P. 44.2(b).




 We affirm the judgment. 

 

 

 Jack Carter

 Justice


Date Submitted: December 23, 2008

Date Decided: January 7, 2009


Do Not Publish 
1. We most recently addressed this issue in Austin v. State, No. 06-07-00161-CR, 2008 Tex.
App. LEXIS 8630 (Tex. App.--Texarkana Nov. 18, 2008, no pet. h.) (mem. op., not designated for
publication).
2. We again point out to the trial bench that this is a risky practice. If there is evidence that a
jury saw the restraints, it very well might cause the jurors to conclude the defendant was dangerous
and guilty, which in all likelihood would require a reversal of the conviction, unless the situation
involved the "rare" case where a necessity for restraint existed and the trial court specified such
reasons in the record.